**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 20, 2015**

# In the Court of Appeals of Georgia

A14A1921. NELSON v. HAMILTON STATE BANK.

BRANCH, Judge.

Jimmy R. Nelson signed a commercial promissory note in favor of Bartow County Bank (BCB) in the original principal amount of $2,977,019.70. Upon Nelson's default, Hamilton State Bank (HSB), the successor-in-interest to BCB, brought suit on the note. The trial court granted summary judgment to HSB for $2,866,990.37 plus post-judgment interest. On appeal, Nelson contests the amount of the indebtedness and asserts that there is a genuine issue of material fact as to whether HSB's actions directed at his business partner and cousin Dolph Nelson ("Dolph") impaired Nelson's ability to make payments to HSB. For the reasons that follow, we affirm the judgment of liability and reverse as to damages.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assoc. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So construed, the record shows that Nelson and Dolph are each fifty percent owners of one or more corporate entities related to the family furniture business; that in 2005, two of the corporate entities entered into a $3.9 million loan with BCB with the final payment due on February 21, 2010 (the "furniture business loan"); and that Nelson was on the board of directors of BCB during that entire time.

Meanwhile in March 2007, Dolph purchased a residence and obtained a purchase money loan for $586,729.50 from BCB. The associated security deed included a "dragnet clause," which provided that the real estate secured the residential loan and "any and all other and further indebtedness now owing or which may hereafter be owing, however incurred, to [BCB], its successors and assigns, by [Dolph Nelson] and [his] successors in title."[1] In November 2007, Dolph obtained an

---

[1] On the day the security deed was recorded, Dolph conveyed his interest in the residence to his wife.

2

equity line of credit (ELOC) on the residence and used the proceeds to pay off the purchase money note on the residence. Although the purchase money loan was satisfied as a result, BCB did not cancel the original purchase money security deed that contained the dragnet clause.

Next, on June 7, 2010, Nelson and Dolph "renewed" the furniture business loan by each entering into personal loans with BCB: Nelson's loan, at issue in this case, was in the amount of $2,977,019.70; and Dolph's loan was in the amount of $2,980,336.97. Nelson avers that for several reasons, including certain banking regulations, BCB required personal loans instead of another commercial loan in the name of the furniture business entities. Thereafter, the furniture business made 16 monthly payments on each of the personal loans but none after October 2011.

In the meantime, in April 2011, BCB was closed by the Georgia Department of Banking and Finance; the Federal Deposit Insurance Company was appointed a receiver, and it assigned Nelson's promissory note to HSB. In October 2011, Dolph paid off the equity line of credit and the furniture business made its last payments on the Nelson and Dolph 2010 promissory notes. Dolph learned several months later that HSB continued to hold an interest in his personal residence as security for payment of his 2010 $2.9 million note.

In March 2012, HSB brought separate suits against Nelson and Dolph for the unpaid balance on the two personal notes. The trial court separately granted summary judgment in favor of HSB in both cases. And Dolph, who is represented by the same attorneys, has filed a separate appeal.

1. Nelson contends that the trial court erred by rejecting as a matter of law his defense that his and Dolph's 2010 promissory notes were inextricably intertwined such that Nelson should be excused from payment because of HSB's actions vis-a-vis Dolph. Nelson asserts that HSB breached its contract with Dolph regarding the security on his home and improperly "asserted leverage" over Dolph by use of the dragnet clause, which, Nelson argues, should have been extinguished when Dolph satisfied his residential purchase mortgage debt in November 2007 with the proceeds of the ELOC. Nelson also asserts that there are issues of fact as to whether HSB intended to consider Dolph's residence as a part of its security for Dolph's 2010 promissory notes. We agree with HSB that this enumeration of error lacks merit.

First, Nelson has not asserted that he was a party to or a third-party beneficiary of Dolph's residential mortgage, the ELOC, or Dolph's 2010 promissory note. Accordingly, he lacks standing to raise claims based on those transactions. *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (1) (714 SE2d 388) (2011) ("As a general

4

rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract.") (citations omitted). See also *Jurden v. HSBC Mtg.Corp.*, 330 Ga. App. 179 (1) (765 SE2d 440) (2014) (where plaintiff was not a party to loan agreement or assignment of security interest nor a third party beneficiary under either agreement, he lacked standing to challenge either agreement) (physical precedent only); OCGA § 9-2-20.[2]

Instead, Nelson argues that the two 2010 promissory notes were "inextricably intertwined" and that therefore he was affected by HSB's actions vis-a-vis Dolph's promissory note. See *Iwan Renovations v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 128 (1) (673 SE2d 632) (2009) ("As a general rule, two debts that are incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor are inextricably intertwined.") (citations and footnotes omitted.) When separate debts are seen as inextricably intertwined, Georgia courts

---

[2] OCGA § 9-2-20 provides as follows:
(a) As a general rule, an action on a contract, whether the contract is expressed, implied, by parol, under seal, or of record, shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent. (b) The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.

5

reviewing confirmation of foreclosure sales will examine the foreclosure of both debts when determining whether a deficiency judgment is allowed under the confirmation statute (OCGA § 44-14-161).[3] We know of no case law, and Nelson has not cited any, showing that this doctrine has been applied outside of the determination of whether deficiency judgments are allowed. We decline to do so here.

Because Nelson has no standing to assert defenses based on Dolph's contractual relationship with HSB, this enumeration of error is without merit.

2. Nelson contends that the judgment amount is not supported by competent evidence in the record. In his appellate brief, he states that he "admits to execution of the Note but not the amount entered by the court." We agree that an issue of fact remains as to the amount.

"Where a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty." *Myers v. First Citizens Bank & Trust Co.*, 324 Ga. App. 293, 296 (2) (750 SE2d 378) (2013) (suit on a note) (punctuation and

---

[3] "This court has applied OCGA § 44-14-161 (a) to foreclosure proceeding on separate debts which are inextricably intertwined to prevent creditors from circumventing the statute's mandates by making successive loans against the security of the same property." *Iwan Renovations*, 296 Ga. App. at 128 (1) (citation and footnote omitted).

footnote omitted); see also *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga. App. 513, (2) (b) (__ SE2d __) (2014) ("[I]n an action on a promissory note, the plaintiff has the burden of proving that the defendant is indebted to him and in a definite and correct amount.") (punctuation and footnote omitted). Thus, a plaintiff in a suit on a note is not entitled to summary judgment as to the amount of the debt where it offers "no testimony or any documentation explaining its method of calculating the specific amounts sought" such that the trial court is unable to confirm the plaintiff's calculation of the purported damages. *Myers*, 324 Ga. App. at 296 (2); cf. *Alexander v. Wachovia Bank, Nat. Assoc.*, 305 Ga. App. 641, 643 (700 SE2d 640) (2010) (judgment on the pleadings improper under the same circumstances).

The trial court's order, which was prepared by HSB, simply states that HSB "is entitled to damages under the Note (as defined in the Plaintiff's Verified Complaint) in the amount of $2,866,990.37, which amount is equal to the outstanding principal balance due under the Note as of March 19, 2014."[4] But nowhere in the verified complaint, the record below, the briefs below or on appeal, nor at the hearing on the motion for summary judgment has HSB shown how it calculated the amount of

---

[4] HSB states that it "waived its claim for interest, expenses, and fees" and that the trial court "entered judgment only for the principal amount owing."

7

principal due on the loan, shown the breakdown of principal and interest in each payment, or produced an amortization schedule for the loan or witness testimony of the amount the trial court ordered. It appears that the only manner in which HSB presented the amount of outstanding principal to the trial court was in a statement by HSB's counsel at the hearing on the motion for summary judgment and in HSB's proposed order, which the trial court used and is quoted above. The trial court's judgment as to the amount of the debt therefore lacks a sufficient basis. *Myers*, 324 Ga. App. at 296 (2) (summary judgment as to amount due on note improper where bank failed to provide sufficient testimony or documentation so that court could calculate the amount with a reasonable degree of certainty).

In an attempt to justify the trial court's award, HSB points to four items of evidence: (1) when asked in discovery to itemize all payments he made toward the note, Nelson responded, "This information is equally available to [HSB]"; (2) in his deposition, Nelson testified that although he did not remember the amount owed, his secretary knew and it was "like two million eight or something[;] I don't remember," and his secretary never told him that HSB's calculation was incorrect; (3) an HSB senior vice president averred that Nelson was in default and that as of September 9, 2013, he was indebted in the amount of $3,218,538.88, "inclusive of principal,

8

interest, expenses and fees to that date, but not inclusive of interest that has accrued since that date, attorneys' fees, and other costs, charges, and fees allowed pursuant to the terms of the Note" ; and (4) the terms of the note itself, which specify the total principal, the interest rate, the accrual method, and the number of payments required, together with the fact that Nelson stopped making payments in October 2011.

We fail to see how the first three items listed by HSB could possibly establish the outstanding principal as of March 19, 2014, to the penny. Although Nelson may have admitted that he did not disagree with HSB's accounting, there is no indication that Nelson was referring to a specific number. And even though the note itself gives detailed information about the payments,[5] this Court is unable to recreate the amount awarded by the trial court. Accordingly, the court erred by entering a judgment for the specific amount of the debt.

3. Because the trial court correctly determined that Nelson is liable on his 2010 note to HSB, we affirm the judgment below as to liability but reverse the award of

---

[5] The note imposes a 5.25 percent interest rate on the outstanding principal from June 7, 2010 forward and requires 35 payments of $20,227.36 starting on July 20, 2010, with a balloon payment for the balance of unpaid principal and interest due on May 20, 2013; the accrual method is stated as "actual/360." It is undisputed that Nelson made 16 payments.

9

damages and remand for further proceedings consistent with this opinion. *Hanna v. First Citizens Bank & Trust Co.*, 323 Ga. App. 321, 329 (4) (744 SE2d 894) (2013).

*Judgment affirmed in part and reversed in part, and case remanded. Barnes, P. J., and Boggs, J., concur*.